A93A0336. HAMILTON et al. v. ADVANCE LEASING &
RENT-A-CAR, INC. et al.
(432 SE2d 559)

Judge John W. Sognier.

Appellant-plaintiff Gary Hamilton leased an automobile from appellee-defendant Advance Leasing & Rent-A-Car, Inc. (ALR), a corporation now owned by appellee-defendant Rivergate Corporation, Inc. (RCI). Hamilton's wife, Christine, was injured when she totaled the car in a one-vehicle accident. Pursuant to a business automobile policy issued to ALR's principal by Liberty Mutual Insurance Company, basic personal injury protection (PIP) and liability coverage were afforded to permissive users of the leased vehicle. Liberty Mutual paid Christine Hamilton $3,700 as amounts recoverable as basic PIP. The Hamiltons initiated the instant action against ALR and RCI alleging fraud and breach of contract for appellees' failure to obtain liability insurance coverage for the Hamiltons which included optional PIP benefits. After discovery, ALR and RCI moved for summary judgment. This motion was granted by the trial court and the Hamiltons appeal.

1. Pursuant to the lease, Mr. Hamilton agreed to bear all risk of damage, loss, theft, or destruction of the leased vehicle, and to maintain insurance for comprehensive fire and theft; collision and upset; and automobile liability insurance. The lease also contained a provision whereby, in consideration for an additional monthly fee, appellee-lessor would "attempt to obtain [liability] insurance coverage, as follows . . . (a) $15,000 B[odily] I[njury] per person/ $30,000 B[odily] I[njury] per accident or . . . (b) $10,000 [property damage] single limit." A provision in subsequently executed monthly rental agreements stated that any coverage for public liability or property damage obtained by ALR for Hamilton was excess coverage over any other insurance and that it did not cover injuries to the lessee or his passen-

ger. Mr. Hamilton paid an additional $30 a month to ALR and did not obtain any other automobile liability insurance policy on his own. Contrary to appellant's assertions, by agreeing to "attempt to obtain" liability insurance on Mr. Hamilton's behalf and by accepting his additional payments, appellee ALR did *not* thereby become an "insurer" within the meaning of former OCGA § 33-34-5 (a) (1), such that it would have had the statutory obligation to offer *optional* PIP coverage up to $50,000. Rather, ALR merely agreed to become the lessee's agent to obtain for him the specified insurance coverages. Appellants' contention that appellees breached a statutory duty to offer optional PIP is without merit.

Appellants nevertheless argue that this agreement to "attempt to obtain" insurance coverage is ambiguous and must be strictly construed against the drafter so as to include a promise to obtain optional PIP coverage of $50,000. OCGA § 13-2-2 (5). Neither basic PIP nor optional PIP was expressly requested by Hamilton in the lease. However, the specified amounts and coverages that ALR agreed to "attempt to obtain" for appellant were those which had been statutorily mandated as the *minimum* permissible automobile liability coverages under the former financial responsibility laws. See OCGA §§ 33-34-4 (a) (1); 40-9-37 (a). It is true that "liability insurance" is broader than "liability coverage." "[M]otor vehicle liability insurance required by the [former] Motor Vehicle Safety Responsibility Act . . . must [have provided] certain minimum benefits 'without regard to fault' . . . [Cits.] . . . '[L]iability policies' in this state are not limited to liability coverage." (Emphasis omitted.) *Auto-Owners Ins. Co. v. Safeco Ins. Co. of America*, 245 Ga. 558, 561 (1) (266 SE2d 175) (1980). However, even construing appellee's promise to "attempt to obtain" liability *insurance* to include the promise to "attempt to obtain" some level of benefits payable "without regard to fault," i.e., basic PIP coverage, still that tacit promise cannot be read so broadly so as to include a promise to obtain *optional* PIP benefits. Rather, the promise to obtain the statutorily mandated minimum liability coverage can only be read to include the promise to obtain the statutorily mandated minimum PIP coverage as well. "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." OCGA § 13-2-3. Pursuant to the business automobile policy issued by Liberty Mutual, appellants were permissive users of the leased vehicle. They were afforded the basic no-fault coverage provided for in that policy, and Christine Hamilton was paid the no-fault benefits to the extent she was entitled thereunder. Accordingly, ALR did *not* breach any agreement to obtain liability insurance, even to the extent that its promise

could be read to include basic PIP protection. The trial court correctly granted appellees summary judgment with respect to any claim for breach of contract to obtain specified insurance coverage. Compare *England v. Ga.-Fla. Co.*, 198 Ga. App. 704 (1) (402 SE2d 783) (1991).

2. " 'The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. (Cits.) Nor does actionable fraud result from a mere failure to perform promises made. (Cit.) "Otherwise any breach of a contract would amount to fraud." (Cit.)' [Cit.] An exception to the general rule [exists where] a promise as to future events [is] made with a present intent not to perform or where the promisor knows that the future event will not take place. [Cit.]" *Sofate of America v. Brown*, 171 Ga. App. 39, 41 (3) (318 SE2d 771) (1984). We have already determined in Division 1 that the written agreement to "attempt to obtain" liability insurance does not include the promise to obtain optional PIP. Accordingly, the agreement itself provides no basis for an action in fraud for the failure to provide or offer optional PIP.

Moreover, the lease contains a merger clause, reciting that the writing represents the entire agreement between the parties. "[R]egardless of whether alleged oral misrepresentations are relied upon offensively or defensively, ' ' "(t)he presence of a merger clause in the underlying contract is determinative if the defrauded party has not rescinded but has elected to affirm the contract. . . . (Cits.)" (Cit.)' [Cit.]" *Flair Fashions v. SW CR Eisenhower Drive*, 207 Ga. App. 78 (427 SE2d 56) (1993). By accepting and retaining the basic PIP benefits provided for in the insurance covering the vehicle, appellants have ratified the contract of agency as made and have waived any claim for fraud in the inducement. OCGA § 13-4-60. See generally *Flair Fashions v. SW CR Eisenhower Drive*, supra at 79. "Ordinarily [one] who knowingly accepts and retains any benefit under a contract which he has been induced to make by fraud, after he has knowledge of such fraud, affirms the validity of the contract and will not be heard thereafter to repudiate it. [Cits.]" *Legg v. Hood*, 154 Ga. 28, 29 (2) (113 SE 642) (1922). The trial court correctly granted summary judgment as to any allegation of fraud.

3. Remaining enumerations have been considered and are found to be moot.

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED MAY 7, 1993 —
RECONSIDERATION DENIED JUNE 8, 1993

*Goldstein & Redic, James A. Goldstein*, for appellants.

*Alembik, Fine & Callner, Mark E. Bergeson*, for appellees.