A96A0705. BRADLEY v. BRITISH FITTING GROUP, PLC et al.
(472 SE2d 146)

RUFFIN, Judge.

British Fitting Group, PLC, Harben, Inc., and British Flowplant Group, Ltd. (collectively "BFG"), executed a release agreement with Martin Bradley to settle Bradley's claim that he was wrongfully terminated from BFG's employment. In this action, BFG sued Bradley for breach of contract and fraud arising from Bradley's alleged breach of the release agreement. Bradley counterclaimed, inter alia, that BFG was liable to him for intentional infliction of emotional distress. The trial court granted BFG's motion for summary judgment and denied Bradley's cross-motion for summary judgment. Bradley appeals from the trial court's order, and for reasons which follow, we affirm.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). . . . If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Many of the material facts in this case are undisputed. British Fitting Group and British Flowplant Group are United Kingdom corporations. Both corporations previously employed Bradley in England pursuant to an employment agreement. Under an addendum to the employment agreement, Bradley was subsequently transferred to Georgia to work for a subsidiary, Harben, Inc. On October 9, 1992, BFG terminated Bradley's employment. To settle Bradley's contention that he was wrongfully terminated, BFG paid him $26,558.69 and the parties executed a mutual release agreement on January 25, 1993. In its complaint, BFG alleged that after signing the release, Bradley filed a claim against it in the United Kingdom

Industrial Tribunal ("Industrial Tribunal") seeking compensation under United Kingdom law for his allegedly unfair dismissal. In support of its motion for summary judgment, BFG cited to the release agreement's language and portions of Bradley's deposition testimony.

1. In his first enumeration of error, Bradley asserts that the trial court erred in granting summary judgment because it lacked subject-matter jurisdiction. In support of his contention, Bradley cites a paragraph in his employment agreement with BFG which provides that "the *parties* submit to the exclusive jurisdiction of the English Courts." (Emphasis supplied.)

As a preliminary matter, we note that the superior court clearly had jurisdiction to decide the contract and tort issues before it. See Ga. Const. of 1983, Art. VI, Sec. IV, Par. I; OCGA § 15-6-8. See also *Vann v. DeKalb County Bd. of Tax Assessors*, 186 Ga. App. 208 (1) (367 SE2d 43) (1988). Furthermore, Bradley has not shown that the jurisdiction clause in the employment contract governs the superior court's jurisdiction over a dispute concerning the release agreement. Moreover, the employment contract provision does not purport to address subject-matter jurisdiction, but rather personal jurisdiction. The provision's clear language speaks to jurisdiction over the parties, not the subject matter. Had the provision addressed subject-matter jurisdiction, it would have been invalid because parties cannot determine a court's subject-matter jurisdiction by contract. *Apparel Resources Intl. v. Amersig Southeast*, 215 Ga. App. 483 (1) (451 SE2d 113) (1994). Accordingly, because the provision Bradley relied on did not deprive the trial court of subject-matter jurisdiction, we find no error.

2. Bradley asserts that the trial court erred because BFG's claims were barred by the principles of res judicata and collateral estoppel. Bradley argues that the trial court in this case was bound by the Industrial Tribunal's award, which did not recognize the validity of the release under its own laws. Bradley's argument fails for two reasons.

First, res judicata and collateral estoppel do not apply because Bradley failed to introduce certified copies of the Industrial Tribunal proceedings. "In order to prove res judicata or collateral estoppel, a litigant must introduce those portions of the prior proceeding, duly certified, which are necessary to prove the defense. [Cit.]" *Roberts v. Porter, Davis &c.*, 193 Ga. App. 898, 901 (2) (389 SE2d 361) (1989).

Second, neither the causes of action nor the issues in the two actions were the same. "Three prerequisites must be satisfied before res judicata applies — (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction." *Waldroup v. Green County Hosp. Auth.*, 265 Ga. 864, 866 (1) (463 SE2d 5) (1995). In this

case, we reach only the first prerequisite in concluding that res judicata does not apply. Even if we could rely on the uncertified copies of record, they show that Bradley's cause of action before the Industrial Tribunal was for damages based on his unfair dismissal. In the instant case, BFG asserted causes of action for breach of the release agreement and fraud. Accordingly, the causes of action in each proceeding were different.

Similarly, the issues in the two actions were not identical. Collateral estoppel, which precludes the re-adjudication of an issue, requires in part that the same issue was actually litigated and decided in the previous action. Id. at 867. The issue Bradley asserts was decided in the previous action, whether the release agreement is valid under United Kingdom law, is not an issue in this case. The release plainly states that it is to "be construed under the laws of the state of Georgia." Therefore, the validity of the release must be determined according to our laws. *Manderson & Assoc. v. Gore*, 193 Ga. App. 723 (1) (389 SE2d 251) (1989). Bradley does not argue or point to any evidence showing that the United Kingdom tribunal decided the validity of the release under Georgia law. Because that issue was not previously adjudicated, collateral estoppel does not apply.

3. Bradley asserts that the trial court erred in granting BFG summary judgment on its breach of contract claim because the release agreement was void and not legally binding. Here again, Bradley erroneously relies on United Kingdom law in support of his arguments. As we found in Division 2, the release agreement in this case is to be construed under Georgia law. And, although Bradley cites to the public policy of several federal and state laws concerning unemployment and workers' compensation, he has not shown how any of those laws are applicable in this case. There is no evidence in the record that Bradley sought benefits under these laws, or that he was even entitled to such benefits. Accordingly, we turn our attention to Georgia's laws concerning the construction and validity of release agreements.

" 'A release or settlement agreement is a contract subject to construction by the court. It is governed by state law applicable to contracts in general. The cardinal rule of construction is to determine the intention of the parties. But no construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.' [Cit.]" *Darby v. Mathis*, 212 Ga. App. 444, 445 (1) (441 SE2d 905) (1994).

The release agreement in this case provides that "the parties . . . desire to compromise and settle all claims which exist, whether known or unknown, between [BFG] and Bradley upon the terms hereinafter set forth." Under the agreement, Bradley released BFG

"from all claims, demands, actions, causes of action, known or unknown, of every kind and nature, statutory of (sic) otherwise, in contract or in tort, at law or in equity, and, particularly and without limiting the generality of the forgoing, shall have no claim directly or indirectly as a result of the [employment] Agreement . . . or otherwise as a result of his employment relationship with [BFG]." The release reflects that Bradley executed it voluntarily, that he fully understood it, and that he "EXPRESSLY RECOGNIZES THAT [IT] IS A FULL AND GENERAL RELEASE."

In his answer, Bradley admitted to filing a claim in the Industrial Tribunal against BFG for his unfair dismissal. If Bradley desired to reserve his claim before the Industrial Tribunal, he should have specifically stated such a reservation in the release agreement. See id.; *Ingram v. Star Touch Communications*, 215 Ga. App. 329, 330 (1) (450 SE2d 334) (1994). "[S]ettlement is, in and of itself, generally construed to be a final disposition of any claim against a party to settlement by a party to the settlement arising out of the subject incident, unless remaining claims are specifically reserved by any of the parties. [Cit.]" Id. Such compromises are " 'upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence. [Cits.]' [Cit.]" *Herring v. Dunning*, 213 Ga. App. 695, 696 (446 SE2d 199) (1994).

Because Bradley has not shown that the release was invalid or that he made any reservation to preserve the claim at issue, the plain and unambiguous language of the release controls, and any and all causes of action Bradley may have had against BFG were barred. *Darby*, supra at 445. The trial court did not err in granting summary judgment to BFG on its claim for breach of contract. See id.

4. Bradley asserts that the trial court erred in granting BFG summary judgment on its fraud claim because he did not misrepresent a material fact to BFG that induced it to execute the release agreement. Here again, Bradley erroneously relies on his contention that the release agreement was invalid under United Kingdom law. Because we have already concluded that the release is valid under Georgia law, and further find that Bradley executed it with the intent not to comply with its terms, we find no error.

"The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. Nor does actionable fraud result from a mere failure to perform promises made. Otherwise any breach of a contract would amount to fraud. An exception to the general rule exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place." (Citations and punctuation omitted.) *Hamilton v. Advance Leasing &c.*, 208 Ga. App. 848, 850 (2) (432 SE2d 559) (1993).

In this case, BFG presented evidence showing that at the time Bradley executed the release, he fully intended to proceed with his claim against BFG in the Industrial Tribunal. In his deposition, Bradley acknowledged that prior to executing the release, he discussed it with his United Kingdom counsel. He further acknowledged that counsel informed him he could sign the release and later proceed with his claim in the United Kingdom. Bradley admitted that he then executed the release, took the money, and subsequently proceeded with his claim for more money in the Industrial Tribunal. Under the exception stated in *Hamilton*, Bradley's actions constituted fraud.

Bradley also contends that there was no evidence that BFG relied on him not proceeding with his Industrial Tribunal claim. We disagree. The release agreement states that the parties desired to settle "all claims which exist, whether known or unknown, between [BFG] and Bradley. . . ." BFG paid Bradley substantial consideration to settle all such claims. In addition, BFG's supporting affidavit shows that the release was intended "to include any claims in the Industrial Tribunal of the United Kingdom." Because Bradley has not pointed to specific evidence giving rise to a triable issue, we find no error. *Lau's Corp.*, supra at 495.

5. In his final enumeration of error, Bradley asserts that the trial court erred in granting BFG summary judgment on his claim for intentional infliction of emotional distress. Bradley argues that after BFG terminated him, it intentionally withheld money due to him under his employment contract. He claims that during the three and one-half months between his termination and the parties' settlement, he was unable to obtain other employment due to visa restrictions or care for his family. Bradley cites a letter from BFG concerning his termination as one example of outrageous conduct. That letter stated that Bradley would receive formal written notice of his termination from BFG's offices in the United Kingdom. The letter requested that Bradley call to arrange a convenient time to visit the office to collect his personal effects, and that he "please return any keys, company credit cards, or other items that are the property of Harben." Bradley argues that this letter "was such as would naturally humiliate and embarrass to an egregious extent someone in [his] position."

" 'The tort of intentional infliction of emotional distress is recognized in this state, where the defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass, or frighten the plaintiff.' [Cit.] 'The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it.' [Cit.] 'There is no occasion for the law to intervene in every case where someone's feelings are hurt.' [Cit.]" *Carroll v. Rock*, 220 Ga.

App. 260, 262 (2) (469 SE2d 391) (1996). " 'It is for the court to determine whether on the strength of the evidence *severe* emotional distress can be found. [Cit.]' [Cit.]" *Southern Gen. Ins. Co. v. Holt*, 200 Ga. App. 759, 767 (5) (409 SE2d 852) (1991), rev'd in part on other grounds, 262 Ga. 267 (416 SE2d 274) (1992).

The record in this case shows that approximately two weeks after Bradley's termination, BFG offered him a severance package. After BFG's offer, Bradley retained counsel who wrote to BFG demanding significantly more compensation. Thereafter, the parties negotiated settlement terms which were eventually memorialized in the release agreement. Bradley has not pointed to any evidence showing that BFG's conduct in negotiating the settlement amounted to intentional infliction of emotional distress. And, even if Bradley could show that BFG's failure to settle at an earlier date was in bad faith, such conduct by itself would be insufficient to support his claim. See id. " 'Even construing the evidence as we must, in favor of [Bradley] as the nonmoving party, an exhaustive review of the record in this case reveals no actions directed against [him] by [BFG] that amount to "the kind of egregious conduct necessary to state a claim for the intentional infliction of emotional distress." [Cit.]' [Cit.] Therefore, the trial court correctly granted summary judgment in favor of [BFG] on this issue." *Anderberg v. Ga. Elec. Membership Corp.*, 175 Ga. App. 14, 16 (3) (332 SE2d 326) (1985).

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED JUNE 3, 1996.

*Patricia A. Buttaro*, for appellant.
*Gleaton, Scofield, Egan & Jones, E. Gleaton Scofield III, Marla M. Eastwood, Peter M. Lynch III*, for appellees.