[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11711
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 30, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:08-cv-01341-WCO

A. STEPHAN BOTES,

Plaintiff-Appellant,

versus

HOWARD WEINTRAUB,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 30, 2012)

Before TJOFLAT, EDMONDSON and FAY, Circuit Judges.

PER CURIAM:

A. Stephan Botes, proceeding *pro se*, appeals the district court's grant of

summary judgment in favor of Howard Weintraub in Botes's diversity lawsuit

alleging fraud, legal malpractice, and breach of contract.  For the reasons set forth below, we affirm.

## I.  Facts

In early November 2004, Botes was arrested and subsequently indicted on multiple charges, including conspiracy, theft of federal funds and wire fraud. Shortly after his arrest, Botes was interviewed by Howard Weintraub, a criminal defense attorney, who described himself as professionally qualified to represent Botes and promised to provide the most vigorous and zealous defense permitted by law.  According to Botes, Weintraub also stated, among other things, that several of the judges and prosecutors in the district were Weintraub's "buddies" and that the district court judge presiding over Botes's case called Weintraub "Howard" in court and would let Weintraub "have the run of the courtroom."  Botes thus hired Weintraub to represent him through all pre-trial proceedings, and, if necessary, through trial and sentencing.

The original representation agreement called for Botes to pay Weintraub a flat fee of $65,000, which Botes ultimately paid in full.  In February 2005, Botes agreed to pay Weintraub an additional $35,000 on the condition that Botes's insurance company, Zurich American Insurance Company ("Zurich") covered the costs of representation.

2

In late 2004 and early 2005, Botes took a polygraph examination (in two sessions), which he passed. Weintraub moved to the admit the polygraph results into evidence, and a magistrate judge held a *Daubert*[1] hearing on the issue. It appears from the hearing and other documents that Weintraub had decided not to videotape the polygraph exam sessions, even though Botes had been ready to do so, and that videotaping the sessions might have facilitated the admission of the results into evidence. In November 2005, the magistrate issued a report, recommending that Weintraub's motion to admit the polygraph results be denied. Approximately one month later, Weintraub filed objections to the report and recommendation, which remained pending before the district court until March 2006, as discussed below.

Towards the end of 2005, Botes hired another attorney, Brian Steel, to act as co-counsel with Weintraub, ostensibly due to the complexity of Botes's criminal case. The record indicates, however, that Botes was dissatisfied with Weintraub's performance. Botes's major grievance at the time was that Weintraub spent too little time on the case and was not preparing for trial. Moreover, according to Botes's later complaints, Weintraub was reluctant to challenge Botes's overly

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-97, 113 S.Ct. 2786, 2795-99, 125 L.Ed.2d 469 (1993) (describing the factors that a court must consider in determining whether to admit expert scientific testimony under Fed.R.Evid. 702).

3

restrictive pre-trial release conditions, so much so that Botes had to draft the necessary motions himself and coax Weintraub into filing them. Many of Botes's bond conditions were eventually lifted, but in piecemeal fashion over the course of approximately a year.

Near the end of January 2005 and early February 2006, a dispute arose between Botes and Weintraub regarding the $35,000 which Zurich apparently agreed to pay but that Weintraub never received. The parties soon resolved this dispute, with Weintraub agreeing to forego the $35,000 and Botes agreeing to pay him the money if and when he recovered financially. In the middle of February 2006, however, Weintraub sent Botes a formal letter of withdrawal. Weintraub explained that he was withdrawing because Botes believed him to be ineffective and hired Steel as co-counsel due to such perceived ineffectiveness. Botes responded that he needed Weintraub to handle the open issues with the polygraph, as Weintraub was most familiar with the matter. Upon the resolution of those issues, Botes would allow Weintraub to withdraw without any further financial obligations between them.

On March 17, 2006, the district court adopted the magistrate's report and recommendation with regard to the polygraph results, denying their admission into evidence. That same day, Weintraub moved to withdraw as attorney for Botes.

Botes apparently did not receive notice of this motion until the court granted it on April 11, 2006. Botes went to trial in May 2006 and was convicted on 15 of the 48 counts against him. In June 2006, he sent a letter to Weintraub, threatening to sue him for breach of contract and legal malpractice. In that letter, Botes characterized as breach Weintraub's deficient performance throughout representation.

Subsequently, while incarcerated, Botes filed the instant complaint against Weintraub, raising several federal and state claims, including fraud and breach of contract. Among other things, Botes alleged that Weintraub misrepresented his qualifications and the extent of his relationships with judges and prosecutors. Botes also alleged numerous instances of deficient performance on the part of Weintraub, namely, failing to challenge Botes's burdensome pre-trial release conditions, despite Botes's repeated requests to do so; mishandling the polygraph examination sessions by failing to videotape them, thereby precluding the admission the results into evidence; failing to review the indictment for deficiencies; failing to interview any witnesses and review all discovery; failing to file motions to suppress evidence and motions for a speedy trial; failing to protect Botes's various constitutional rights; failing to move to quash a grand jury subpoena, thereby providing the government with incriminating evidence; and withdrawing from Botes's representation before trial.

Weintraub moved to dismiss the complaint for failure to state a claim, and the district court granted Weintraub's motion in part, dismissing all of Botes's federal claims but allowing his state claims of fraud and breach of contract to proceed under diversity jurisdiction. After discovery, Weintraub filed a motion for summary judgment. He argued, among other things, that Botes's breach-of-contract allegations should be construed as a claim of legal malpractice and then dismissed due to Botes's failure to support the claim with expert testimony, as required by Georgia law. To his motion, Weintraub attached an affidavit from himself and another criminal defense attorney, affirming that Weintraub met or exceeded the applicable standard of care with regard to all alleged performance failures. Botes responded and filed his own motion for summary judgment.

The district court granted Weintraub's motion for summary judgment and denied Botes's. The court found that Botes failed to establish all the elements of fraud with regard to any of Weintraub's alleged misrepresentations. As to breach of contract, the court determined that most of Botes's allegations concerning Weintraub's preformance were actually claims of legal malpractice, and, because Botes failed to support his malpractice claim with expert testimony, he could not survive summary judgment on this claim. The court then found that Weintraub's

6

withdrawal as counsel did not constitute a breach of contract because the parties abandoned their representation agreement by mutual consent.

## II.  Analysis

We review the grant of summary judgment *de novo*, and the district court's factual findings for clear error.  *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010).  A district court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  We draw all factual inferences in a light most favorable to the non-moving party.  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  However, the non-moving party cannot create a genuine issue of material fact through speculation, *id.*, or evidence that is "merely colorable" or "not significantly probative," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## A.  Fraud

Botes argues that Weintraub committed fraud by (1) lying to Botes about his qualifications and his friendships with the judges and prosecutors, (2) lying to Botes about the reasons for taking the polygraph examination, hoping that Botes would fail so that Weintraub could maneuver him into a plea bargain, (3) telling Botes that his pretrial release conditions were standard and that Botes was wasting

7

his time challenging them, (4) telling Botes that he would learn the case, prepare for trial, and represent him zealously, and (5) promising Botes that he would not withdraw, while at the same time intending to withdraw.[2]

To prevail on a claim of fraud under Georgia law, a plaintiff must establish five elements: (1) a false representation or omission of a "material fact," (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damages. *TechBios, Inc. v. Champagne*, 688 S.E.2d 378, 380 (Ga. Ct. App. 2009).

In this case, the district court correctly found that Botes failed to establish all elements of fraud. First, the record does not reveal any material false statements or omissions by Weintraub regarding his professional qualifications and his relationships with judges and prosecutors. Weintraub's general statements that certain judges were his "buddies" or that he would have "the run of the courtroom" constitute no more than subjective opinion and "puffing," designed to sell Weintraub's services, and, as such, these statements cannot constitute fraud. *See U-haul Co. of W. Ga. v. Dillard Paper Co.*, 312 S.E.2d 618, 620 (Ga. Ct. App.

---

[2] Botes also raises several other claims of bad faith and intentional misconduct on the part of Weintraub, including a breach of fiduciary duty. However, the district court specifically dismissed all claims raised by Botes except fraud and breach of contract. Botes does not challenge the district court's dismissal order. Accordingly, we will only address Botes's claims of fraud, breach of contract, and those breach-of-contract allegations that the district court construed as claims of legal malpractice.

8

1983) (stating that expressions of "opinion, general commendations, and sales puffing" cannot form a basis for a claim of fraud); *see also Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1027-28 (11th Cir. 2003) (holding that, under Georgia law, the defendant's statement that his company performed strongly was not actionable as fraud, in part because the alleged misrepresentation was "not the sort of empirically verifiable statement that [could] be affirmatively disproven, as it [was] inherently a label expressive of, and generated by, opinion").

Similarly, with regard to the polygraph examination, the record does not reveal any material false statement or omission by Weintraub designed to induce Botes into taking the polygraph. In any event, Botes could not have justifiably relied on any perceived indication by Weintraub that the test was conducted solely for the purpose of obtaining favorable results and admitting them into evidence. Botes should have known that the outcome of the polygraph examination was inherently unforeseeable, at least to Weintraub, and that neither Weintraub nor Botes would seek admission of unfavorable results. Botes further failed to show that he justifiably relied on Weintraub's statements concerning the futility of challenging Botes's pre-trial release conditions; Botes himself asserts that he repeatedly asked Weintraub to challenge these conditions, despite Weintraub's reluctance to do so.

Finally, Weintraub's alleged promises that he would learn the case, prepare for trial, represent Botes zealously, and would not withdraw from representation do not constitute fraud. "The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. Nor does actionable fraud result from a mere failure to perform promises made. Otherwise any breach of a contract would amount to fraud." *Bradley v. British Fitting Grp., PLC*, 472 S.E.2d 146, 151 (Ga. Ct. App. 1996) (quotation omitted). While fraud may exist if a promise is made without any intent to perform, *id.*, there is no evidence, aside from Botes's unsupported and conclusory assertions, that Weintraub made the aforementioned promises without having any intent to keep them, *see Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). In light of the foregoing, the district court did not err in granting Weintraub summary judgment on Botes's fraud claim.

## B. Legal Malpractice

Botes argues, essentially, that the district court erred in treating his breach-of-contract claim as one of legal malpractice. He also contends that the district court erred by summarily denying his malpractice claim for lack of expert testimony. He argues that federal law, which does not require expert testimony,

preempts Georgia law regarding summary judgment proceedings; that Georgia's expert testimony requirement violates the Seventh Amendment's guarantee of a jury trial; and that, as an incarcerated plaintiff proceeding *pro se*, he received insufficient notice of this requirement.

To begin, the district court properly construed the majority of Botes's breach-of-contract allegations as a claim of legal malpractice. To prove legal malpractice in Georgia, a plaintiff must show (1) that he employed the defendant attorney, (2) that the attorney failed to exercise ordinary care, skill and diligence, and (3) that such negligence proximately caused damage to the plaintiff. *Fortson v. Hotard*, 684 S.E.2d 18, 20 (Ga. Ct. App. 2009). All of Botes's breach-of-contract claims (except concerning Weintraub's withdrawal) rested on Weintraub's alleged performance deficiencies, such as failing to challenge bond conditions, mismanaging the polygraph examination, and failing to examine discovery documents and interview witnesses. As such, these claims directly implicated Weintraub's exercise of ordinary care, skill, and diligence in representing Botes, and were properly construed as allegations of legal malpractice. *See id.*; *Razete v. Preferred Research, Inc.*, 397 S.E.2d 489, 490 (Ga. Ct. App. 1990) ("Wherever it is necessary to establish the parameters of acceptable professional conduct in order to

11

prove negligence or breach for failure to perform in a workmanlike manner, the case must be deemed a *professional* malpractice case." (quotation omitted)).

Under Georgia law, a plaintiff needs to present expert testimony in order to survive summary judgment in a legal malpractice case. *Johnson v. Butcher*, 301 S.E.2d 665, 666-67 (Ga. Ct. App. 1983). Expert testimony is necessary to rebut the presumption that the attorney provided legal services in an ordinary skillful manner, thereby establishing a genuine issue of fact with regard to the reasonableness of the attorney's representation. *Id.*; *see also Taylor v. Spence*, 390 S.E.2d 309, 310 (Ga. Ct. App. 1990) ("The sworn testimony of the defendant in a legal malpractice action to the effect that his representation of the plaintiff complied with the applicable standards of professional conduct, if not controverted by expert testimony to the contrary, will authorize the grant of summary judgment in his favor.").[3]

Botes's challenges to the expert testimony requirement are not persuasive. First, our precedent forecloses his argument that federal law rather than Georgia law should govern the need for expert testimony. *See Helmich v. Kennedy*, 796

---

[3] The need for expert testimony at the summary judgment stage should not be confused with Georgia's statutory requirement that an expert affidavit be attached to the complaint in a professional malpractice action. *See* O.C.G.A. § 9-11-9.1. That statutory pleading requirement is not at issue in this case.

12

F.2d 1441, 1442-43 (11th Cir. 1986) (upholding the grant of summary judgment against a *pro se* plaintiff in a diversity legal malpractice suit because the plaintiff failed to produce expert testimony in the form of an affidavit, as required by Georgia law). Second, Georgia's expert testimony requirement does not violate the Seventh Amendment. As mentioned above, an expert affidavit is required to establish genuine issues of fact for the jury in a legal malpractice claim. *See Johnson*, 301 S.E.2d at 666-67. We, in turn, have held that a district court does not violate the Seventh Amendment when it grants summary judgment based on a lack of reasonably disputable material facts. *Garvie v. City of Ft. Walton Beach*, 366 F.3d 1186, 1190 (11th Cir. 2004). Finally, regarding notice, Weintraub argued explicitly in his motion for summary judgment that Botes's malpractice claim should be denied for lack of expert testimony. Thus, Botes cannot now complain that he received no notice of this requirement.

In sum, Botes needed expert testimony to survive summary judgment on his legal malpractice claim. *See Johnson*, 301 S.E.2d at 666-67; *Taylor*, 390 S.E.2d at 310. Because Botes failed to produce such testimony, the district court correctly granted summary judgment to Weintraub.[4]

---

[4] We acknowledge that expert testimony is not required in "clear and palpable" cases of malpractice, where, for example, an attorney misses the expiration of a statute of limitations. *Hughes v. Malone*, 247 S.E.2d 107, 111 (Ga. Ct. App. 1978). However the specific instances of

## C. Breach of contract

Botes argues that Weintraub breached their representation agreement by withdrawing as counsel without taking care of outstanding issues, the resolution of which was a condition for Botes not opposing Weintraub's withdrawal.

To establish a breach-of-contract claim in Georgia, a plaintiff must show "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Duke Galish, LLC v. Manton*, 707 S.E.2d 555, 559 (Ga. Ct. App. 2011) (quotation omitted). "Parties may by mutual consent abandon an existing contract between them so as to make it not thereafter binding and the contract may be rescinded by conduct as well as by words." *Fernandez v. WebSingularity, Inc.*, 681 S.E.2d 717, 723 (Ga. Ct. App. 2009) (quotation omitted).

Here, the record reveals that Botes and Weintraub abandoned or rescinded their representation agreement by mutual consent when Weintraub decided to withdraw and Botes agreed not to oppose his withdrawal, provided certain conditions were met. Judging by Botes's communications with Weintraub, Botes's primary condition for withdrawal was the resolution of the polygraph issues, and Weintraub substantially complied with this condition. On March 17, 2006, the

---

malpractice that Botes has alleged do not rise to this level, especially given the affidavits of Weintraub and another criminal defense expert, according to which Weintraub's performance fully complied with the applicable standard of care. *See Taylor*, 390 S.E.2d at 310.

14

district court issued a final order denying Botes's motion to admit the polygraph results, which appeared to resolve all outstanding issues related to the polygraph. That same day, Weintraub moved to withdraw from representation without opposition from Botes. While Botes alleges that he was not aware of Weintraub's motion to withdraw until it had been granted, nothing in the record suggests that, at the time Weintraub withdrew, Botes considered the conditions for Weintraub's withdrawal to be unfulfilled. In fact, Botes emailed Weintraub in June 2006 and threatened to sue for breach of contract, but in that email, Botes only characterized as breach Weintraub's performance deficiencies, not his withdrawal. Accordingly, the district court did not err in finding that Weintraub's withdrawal did not constitute a breach of contract.

In addition to the main issues discussed above, Botes raises a number of other arguments on appeal, namely, (1) that the district court erroneously allowed Weintraub to rely on affirmative defenses not raised in Weintraub's initial pleadings, (2) erroneously disregarded Weintraub's factual admissions in granting summary judgment, (3) conspired with the court clerk, Weintraub, and his counsel to deny Botes a jury trial, and (4) erred in awarding costs to Weintraub. After carefully reviewing the record and the parties' arguments, we find these claims to be meritless, warranting no further discussion. Therefore, we affirm.

**AFFIRMED.**