### COLLIER *v.* COLLIER.

1. An executor may purchase from a legatee who is sui juris his interest in the estate, provided there is no fraud, no concealment, and no advantage taken by the executor of information acquired by him in the character of executor. A petition by a legatee, seeking to set aside a sale by him, to executors, of his interest in the estate, alleging that, because of his limited education, dissipated habits, and ignorance of real-estate values, he did not know the value of the land of the estate, but that the executors did know, and did not disclose the price for which a part of the land had been sold (which would have served as an illustration of the value of the whole), and that he sold his interest therein to the executors for less than half of its then present worth, payable from property and funds of the estate, is not subject to general demurrer.
2. A contract between a legatee and executors, whereby the legatee receives certain property of the estate in severalty in consideration of his relinquishment of his interest in the estate, is not without consideration; but any disproportion between the value of the property received and the value of the interest relinquished may be considered in passing on the bona fides and fairness of the transaction.
3. A party is not obliged to return that which he will be entitled to retain, as a condition precedent to a cancellation of the contract.

FEBRUARY 27, 1912.

Equitable petition. Before Judge Pendleton. Fulton superior court. December 9, 1910.

In his petition to vacate a deed of relinquishment of his interest under the will of his father, and an acquittance receipt to the executors of the will, the plaintiff, Sanford G. Collier, alleged as follows: He is the youngest child of his father, reared on his father's

farm near the city of Atlanta, reaching his majority with practically no education. Upon his arrival at ·the age of 21 years, he moved to the neighboring city, where he became dissipated and acquired habits and formed social relations that unfitted him for business and rendered him incapable of properly caring for himself in the struggle of life. On March 1, 1906, his father died testate, leaving a will in which the estate was to be equally divided between his wife, plaintiff's mother, his nine living children, and the representative of a deceased child; that is to say, into eleven shares, one share to each legatee. The portion of the estate devised to the testator's wife was given to her to use and enjoy during her life; and if at her death any portion of the same should remain unconsumed or unused by her in her support, it was to be equally divided among the children or their legal representatives. The 6th item of the will was as follows: "I name and appoint as my executors my son George Washington Collier by my first marriage, and my son John Wesley Collier by my second marriage, resposing confidence in them that they will fairly and justly execute my will for the best interest of my .wife and all my children. I authorize them to sell all of my property, whether real or personal, either as a whole or in parcels or subdivisions, as they may think best, and as they may judge to be for the best interest of my wife and all of my children. In other words, I leave the manner of the sale or disposition of my property to my executors, letting them be the judge of the best manner of disposing of the same so as to best serve the interest of my wife and all of my children." The will was duly probated, and the executors qualified as such at the April term, 1906, of the court of ordinary. At the time of the death of his father the plaintiff was heavily involved in debt, from which he had no ability to extricate himself, and in his hopelessness there was no prospect for him to do anything towards earning a livelihood or making anything by which to care for his wife and himself. His share of his father's estate was all that he could see from which he could possibly secure subsistence. He had no conception of its value. He knew that his father left a body of land (500 acres) besides other property. While he knew where this 500 acres of land was situated, and had lived ·on it all his life, he did not know anything really of its value; and by reason of his course of life for the past six or seven years since reaching his majority, he was totally incapable

and incapacitated to estimate values. The executors were his elder brothers, both of whom had considerable experience in business, and were fully acquainted with the estate of his father. Upon their qualification as executors they immediately began to sell portions of the estate, and paid to the plaintiff small amounts on his legacy, aggregating from $1,000 to $1,500, which were insufficient to pay his debts which were burdening him, and to support his wife and himself. The plaintiff was in great stress and wanted money, and he insisted and kept insisting that he must have money; but the executors replied to his importunities, that they were not obliged to divide the estate until it suited them, that under the will no division could be demanded until they in their discretion saw proper to make a division, that they were clothed with full power to control and manage it so long as they thought best; and they refused to make a division. Plaintiff supposed that they had the right to keep the estate together, as they contended. They were acquainted with his condition, and knew his habits; and while they were fully aware of the necessities, which he was incapable of supplying, and believing perhaps that he would soon waste and squander whatever they might turn over to him, they determined not to make a division of the estate. He frequently appealed to the executors to turn over to him at least a portion of his legacy, but they would not, and declared that they would not divide the estate or sell it, and would not advance him anything until the estate in their judgment warranted a division, and left him in a position where he had nothing with which to support his wife and himself, and no prospects then to get anything with which to subsist. In this situation he received from the attorney of the executors a letter (attached to the petition) written at the instance and request of the executors, looking to a full and complete settlement of the plaintiff's interest of every kind and character in the estate of his father. In the letter it was stated: that it was not the wish of the executors that the plaintiff should dispose of his interest in the estate, except in the usual and ordinary way, as the estate would be wound up in due course and process of business, under the terms and power of the will; but as it appeared from conversations with his attorney, agent, and himself that the plaintiff had fully determined to dispose of his interest, the executors submitted three propositions, one of which was that the plaintiff be paid $14,000 and lot number 14

in Block B be deeded to him in fee simple, $5,000 of this sum to be paid in cash and the remainder to be distributed into equal annual payments covering a period of five years, the deferred payments to be evidenced by notes of the estate, payable on or before date of maturity, without interest; that the executors were willing personally to advance the plaintiff's pro rata share of all money on hand, in order to relieve his present necessities, although they did not think it wise under present circumstances to make a full division of all money on hand, as they contemplated expenditures of several thousand dollars in opening up and shaping the property for sale the next spring, and did not think it good policy to divest themselves of money on hand belonging to the estate, but the rest of the heirs would be willing for them to advance the plaintiff his portion and allow theirs to remain for the present in the treasury of the estate; that the executors had already, within the first year of their operations, sold about $31,000 worth of land, receiving remarkably good prices therefor, and it would be unwise for the executors to attempt to dump all of the 500 acres of land on a glutted market at one time, especially as the land was not prepared for sale; that large developments were going on in that neighborhood, and the project to extend the car line was in actual progress. Reference was made to item 6 of the will of Wesley G. Collier, as containing the powers and duties imposed upon the executors. It was stated that in the event the plaintiff accepted either of the propositions, the whole matter would have to be submitted to all the legatees for their unanimous ratification; that one legatee had already expressed himself as being opposed to any settlement with the plaintiff above $15,000; but that the propositions were submitted with the hope that if any of them were accepted, all the heirs could be induced to agree. The plaintiff promptly accepted the proposition set out in the letter from the attorney of the executors, and on the 22d of October, 1907, he went to the office of the attorney of the executors, where the final papers were to be drawn and executed. It required considerable time to prepare the papers, and during their preparation the executors discoursed at length on what a very favorable arrangement the plaintiff was making, and how really they regretted that they had made such a proposition, and one of them manifested a disposition to withdraw it, as he thought what they were paying was more than the plaintiff's in-

terest was worth and they ought not to consummate it. By the terms of the settlement the plaintiff received $5,000 in cash, notes aggregating the sum of $9,000, and a deed to the lot valued at $3,000, which the executors assured him was more than his legacy under the will would be worth; and believing and trusting in them, he signed the deed to them as executors, conveying all his right, title, and interest, present and future, in the estate of his father, and also gave to them a receipt reciting that the money, notes, and deed which he received were in full settlement of all his interest, title, and claim in the estate of his father. He negotiated the notes, sold the lot of land for $2,750, and moved to Florida. His mother died without consuming any of the corpus of her legacy, and the plaintiff demanded of the executors to account to him for his share in the same, which they refused to do; whereupon he instituted a proceeding in the court of ordinary calling upon them for a settlement. He began to suspect their good faith in regard to the transaction in which he was induced by them to transfer and convey his legacy to them and release them as executors for his interest in his father's estate. On investigation he found that the estate was worth a great deal more than they had represented it was worth. In fact, they had since actually sold the 500 acres of land, less some portions, for $375,000. Prior to the transaction with him they had sold some of the land for as much as $600 per acre, but he did not know of this sale when he conveyed his interest in the estate. His legacy, at the time of the conveyance to the executors, was worth between $30,000 and $40,000—double the amount that was turned over to him. The executors misled him as to their rights and powers under the will of his father. Their claim was unfounded, as they had no such power and authority as claimed by them, as more than twelve months had expired since the grant of letters testamentary; and there being no debts due by the estate, the time had arrived when, under the law and provisions of the will, the estate should have been ready for distribution; and the plaintiff had the legal right to demand a partition of the land and assent to his legacy; and instead of in good faith telling him so, the executors took advantage of his ignorance and led him to believe that his legacy was subject to their will, and that they were not bound to deliver it until it suited their pleasure. So misleading him, they took advantage of him and induced him to execute the papers. It is charged,

that the transaction in which he executed these papers was a fraudulent scheme by which it was sought to secure for the estate the plaintiff's interest; that such conveyance was void, because the executors as such had no authority to enter into the contract; they had no right to represent any of the heirs of the estate in the purchase of any legacy; being executors, they could not purchase from the plaintiff except at his option to repudiate his sale; the contracts are not valid and binding, because there is no consideration for either, for at the time of their execution the value of the plaintiff's legacy was worth more than $17,000, and the money, notes, and land given to the plaintiff were due and owing him out of the estate by the executors, and he got nothing in exchange for what the contract ostensibly conveyed to the estate, and from what the executors are released; at the time of the execution of the contract he had no title to his legacy, because the executors had not assented to it.   He has not tendered the money, notes, and deed which he received from the executors, because their value was only $17,000, and his share of the estate is greatly in excess of that sum, and they now owe him as a balance of his legacy $20,000 or other large sum; but he is willing and now offers to credit the sum of $17,000 on the value of his legacy, and to be charged with what he received when he executed the papers, and only seeks to recover the balance of his legacy under the provisions of the will.   He prays, that the proceeding in the court of ordinary be consolidated with the present case, that the deed and acquittance receipt executed by him to the executors be cancelled, and that the executors be required to account to him for his legacy, and that he have a decree fixing the amount due him, after allowing credit for such amounts as he has received upon the legacy.   The petition was dismissed on general demurrer, and the plaintiff excepted.

*Lowndes Calhoun* and *P. H. Brewster,* for plaintiff.

*John L. Hopkins & Sons,* for defendants.

EVANS, P. J.   (After stating the foregoing facts.)

1.   The action is by a legatee against the executors, to vacate a conveyance to the latter by the former of his interest in the testator's estate.   The policy of the law forbids that administrators, executors, or trustees, having duties to perform in reference to property for their cestuis que trust, should deal with the beneficiaries with respect thereto, except upon the footing of the utmost candor

and upon considerations demonstrative of the absence of any undue advantage. An executor can not' purchase property from himself, directly or indirectly, and if he does so, the sale will be set aside at the instance of a legatee who is not in laches, however fair and honest it may have been. *Fleming* v. *Foran,* 12 *Ga.* 594. He may, however, purchase the property from a legatee who is sui juris and laboring under no disability, where all the circumstances of the transaction are fair and open and no advantage is taken by him of the legatee by concealment, misrepresentation, or omission to state any important fact, or by the exercise of undue influence, and the legatee understands the nature and effect of his act. But in such a case a court of equity looks upon the transaction with jealous eye, and will not uphold it unless it appears that the sale is fair and that there is no fraud, no concealment, and no advantage taken by the executor of information acquired by him in his character as such. *Bryan* v. *Duncan,* 11 *Ga.* 67. Professor Pomeroy thus states the principle as deduced from the authorities: " A purchase by a trustee from his cestui que trust, even for a fair price and without any undue advantage, or any other transaction between them by which the trustee obtains a benefit, is generally voidable, and will be set aside on behalf of the beneficiary ; it is at least voidable upon the mere facts thus stated. There is, however, no imperative rule of equity that a transaction between the parties is necessarily, in every way, voidable. It is possible for the trustee to overcome the presumption of invalidity. If the trustee can show, by unimpeachable and convincing evidence, that the beneficiary, being sui juris, had full information of all the facts concerning the property and the transaction itself, and the person with whom he was dealing, and gave a perfectly free consent, and that the price paid was fair and adequate, and that he made to the beneficiary a perfectly honest and complete disclosure of all the knowledge or information concerning the property possessed by himself or which he might with reasonable diligence have possessed, and that he has obtained no undue and inequitable advantage, and especially if it appears that the beneficiary acted in the transaction upon the independent information and advice of some intelligent third person, competent to give such advice, then the transaction will be sustained by a court of equity." 2 Pom. Eq. Jur. § 958. The same rule applies where the purchase is made by the executor for the benefit of

the estate, as enuring to the other beneficiaries. Adams *v.* Cowen, 177 U. S. 484 (20 Sup. Ct. 668, 44 L. ed. 851) ; Ludington *v.* Patton, 111 Wis. 208 (86 N. W. 571) ; Taylor *v.* Taylor, 8 How. 183 (12 L. R. A. 1040). And this is especially true where the executors are legatees under the will, and will reap their proportionate share of whatever benefit may come from their purchase.

The general object of this rule is to prevent imposition on the part of trustees. The petition alleges, as a reason why the transaction was not fair, the gross disproportion between the value of his interest in his father's estate and the value of that which he received from the executors in consideration of his relinquishment of that interest for the benefit of the other legatees, among whom were the executors. He alleges, that he had no conception of the value of his father's estate; that his habits of life, his social and financial condition, and his lack of knowledge of real-estate values incapacitated him to judge its correct value; that his financial stress was such that he eagerly accepted the value placed thereon by the executors, who were his brothers and who had considerable experience in business and were fully acquainted with the estate and its value; that the executors represented to him that they had the power, under the will, to withhold his legacy just as long as they desired, and his pressing needs for money were such that he was prepared to accede to anything by which he could get money; that the executors had previously sold some land, which was not nearly as valuable as other portions of the land, for as much as $600 per acre, and he did not then know of this; and that the actual value of his legacy was more than twice what he received for it. On demurrer these allegations are to be taken as true, and are sufficient to cast upon the executors the burden of showing that the transaction was fair, and that they did not withhold any information which they should have given to the plaintiff.

On the trial, in a comparison of the value of the plaintiff's interest with what he received under his contract with the executors, the discretion of the executors as to the manner of disposing of the land as provided in the will is to be considered. Also, that the plaintiff was not entitled to his remainder interest in the share of his mother until after her death. In determining whether the plaintiff received the substantial equivalent of his legacy, its value is to be estimated under these circumstances, and at its then pres-

ent worth, and not at the value at which the executors subsequently sold the land; and should it appear that there was no concealment or misrepresentation by the executors, and the transaction was fair, and the plaintiff received the substantial equivalent of the then present worth of his interest in the estate, the contract of sale should not be rescinded.

2. One ground upon which the plaintiff relies for the cancellation of his deed and acquittance receipt to the executors is a lack of consideration. It appears from the petition that within the year after the qualification of the executors they had sold off some portions of the land, receiving therefor the sum of $31,000; but it does not appear how much money was in their hands at the time of the transaction. The bulk of the estate, which was in land, had not been disposed of by the executors, for the reasons explained to the plaintiff in the letter from their attorney. The executors deemed it inopportune to throw the whole bulk of the estate on the market, and the plaintiff was anxious to realize on his legacy. The transaction between the executors, who acted with the approval of all the other beneficiaries, and the plaintiff involved a relinquishment of the latter's interest in the estate to the executors for the benefit of his colegatees, in consideration that the executors turn over to him certain property of the estate and give to him the notes of the estate. He converted the land conveyed to him by the executors and their notes into money, and thus realized a present enjoyment of what he contracted to receive as the equivalent of his interest in the estate. The transaction is similar to that of a cotenant who accepts a conveyance in severalty to a part of the joint property, in consideration of his release of his interest in the remainder. Such a transaction is not without consideration, but whether it is fair depends upon the principles discussed in the preceding division of the opinion; and in determining as to that, the court may compare the value of the plaintiff's interest in the estate with the value of what he received.

3. It is further contended that the plaintiff can not maintain the action, because he has not returned the money, notes, and deed which he received from the executors as a consideration for his relinquishment of all interest in the estate of his father. We recognize the general rule to be that " where one who has received money in consideration of land sold and conveyed seeks to rescind the sale

on the ground of fraud, it is incumbent on the seller, before instituting legal proceedings for that purpose, to return, or offer to return, the consideration received." *Bowden* v. *Achor,* 95 *Ga.* 245 (14), 263 (22 S. E. 254). Such a rule is particularly applicable in transactions between parties dealing at arm's length, where the consideration wholly proceeded from the purchaser, and the seller had no interest in the same, either equitably or indirectly. But there are exceptions to this rule; as, in the case of an infant who disaffirms his deed upon attaining majority, he is not required to tender the money received in payment of his land as a condition precedent to the rescission of his deed, where it appears that the money has been expended for an education or for food which has been consumed. *Timmerman* v. *Stanley,* 123 *Ga.* 850 (51 S. E. 760, 1 L. R. A. (N. S.) 379); *White* v. *Sikes,* 129 *Ga.* 508 (59 S. E. 228, 121 Am. St. R. 188). The facts of the present case furnish another instance of the inapplicability of the general rule. The executors, in purchasing the legatee's interest, acted in their representative capacity. Their proposal to buy was made as executors; they took the legatee's conveyance to themselves as executors. They contracted to give what the legatees and themselves agreed was a fair value of the legatee's interest in the estate of his father. The legatee was entitled to receive this much in any event, as a bequest or devise from his father. If the estate was of such value at the time of the legatee's conveyance that his legacy was of greater value than what he received from its sale (and the demurrer admits this), and he is entitled to a rescission under the principles already discussed, there would be no necessity to restore or offer to return what he had received, as a condition precedent to his right to rescind, because the executors have only paid him in part what was his under his father's will. A party is not obliged to return that which he will be entitled to retain as a condition precedent to a cancellation of a contract. 6 Pom. Eq. Jur. § 688. If the plaintiff has received no more than what was bequeathed to him, his offer to account for the same, in the adjustment of the equities of all parties concerned, sufficiently meets the requirement that he who asks equity must do equity.

*Judgment reversed. All the Justices concur, except Hill, J., not presiding.*