S03A1059. HALEY et al. v. REGIONS BANK et al.
(586 SE2d 633)

CARLEY, Justice.

W.B. Haley (Testator) executed his will in 1931, under which each of his seven children would receive an equal share of the estate as a "defeasible fee, subject to be divested, as to any one or more of them, by the death of such child without leaving lineal descendants surviving him or her." Testator died in 1950 and the will was probated in solemn form. In 1964, his widow and his eldest son, Herbert Haley, as co-executors under the will, filed a petition for construction of the will. In that case, this Court held that the lineal descendants of the children never actually became beneficiaries under the will, that the interest of each child of Testator was vested for life and contingent only as to the event of death without surviving lineal descendants, and that such interest, including reversionary and remainder interests, could be transferred during the child's lifetime. *Busbee v. Haley*, 220 Ga. 874 (142 SE2d 786) (1965). Testator's children subsequently executed agreements and quitclaim deeds (Transfer Documents) by which they granted to one another the reversionary inter-

ests which each had in the respective shares of the others.

Herbert died in July, 1999 and was survived only by his wife and adopted daughter. In December, 1999, Testator's two sole surviving children, Reeves and Joel, and two descendants of another child brought suit against Herbert's widow and Regions Bank (Appellees) individually and as co-executors under Herbert's will. Thereafter, Reeves died and his two sons were substituted as plaintiffs in their capacities as co-executors of their father's will. Joel voluntarily dismissed his claims. The remaining plaintiffs (Appellants) are seeking their alleged share of the portion of Testator's estate which Herbert inherited under his father's will. In an extensive order, the trial court granted summary judgment in favor of Appellees on the ground that Herbert's adopted daughter is his "lineal descendant and thus no act of defeasance occurred under [Testator]'s will and on the further ground that the Transfer Documents are valid and bar any recovery by Plaintiffs." The trial court also denied Appellants' cross-motion for partial summary judgment, which was based on the alleged res judicata effect of *Busbee.*

1. Appellants contend that the trial court erroneously ruled that the Transfer Documents extinguished their rights to Herbert's interest in Testator's estate. According to Appellants, Herbert and the lawyer who represented both the estate and all but one of Testator's children acted to benefit Herbert personally despite his fiduciary capacity as executor.

"Equity encourages settlement of controversies by compromise, and especially family controversies." *Cagle v. Justus,* 196 Ga. 826, 832 (1) (28 SE2d 255) (1943). See also *McVay v. Anderson,* 221 Ga. 381, 382 (144 SE2d 741) (1965); *Mitchell v. Mitchell,* 191 Ga. App. 139, 140 (1) (381 SE2d 84) (1989). "It is well settled that agreements among the heirs at law to distribute or divide property devised under a will, in lieu of that manner provided by the will, are valid and enforceable. [Cits.]" *West v. Downer,* 218 Ga. 235, 241 (5) (127 SE2d 359) (1962).

> Such agreements have as their consideration the termination of family controversies. [Cit.] The agreements are supported by the public policy of furthering family harmony and avoiding lengthy litigation. [Cit.] The agreements are in essence solely contractual and governed by the rules applicable to all contracts. [Cit.]

*Beckworth v. Beckworth,* 255 Ga. 241, 243 (1) (a) (336 SE2d 782) (1985). A family settlement is generally valid where the beneficiaries of a will exchange, by quitclaim deeds, future interests which were created to follow their defeasible fees, so as to achieve a merger and

the vesting of a fee simple in each present holder. *Towns v. Walters*, 225 Ga. 293 (168 SE2d 144) (1969). See also *Busbee v. Haley*, supra at 880 (3). And where, as here, "any interest of minors is based upon previous agreements of the adults, that interest is controlled by the agreement of the same adults[.] [Cits.]" *McVay v. Anderson*, supra at 382. See also *Busbee v. Haley*, supra at 877 (1).

Those cases which forbid the executor from purchasing property at his own sale and allow the legatee to set aside any such sale, however fair and honest it may have been, are clearly inapplicable here. *Dorsey v. Green*, 202 Ga. 655, 659 (44 SE2d 377) (1947); *Collier v. Collier*, 137 Ga. 658, 664 (1) (74 SE 275) (1912). Herbert acted as one of several heirs who exchanged reversionary interests in properties which had already been distributed. Thus, this appeal also differs from those cases regarding an executor's purchase of property from a legatee, rather than the estate. Compare *Dorsey v. Green*, supra; *Collier v. Collier*, supra. Cases involving family settlements simply impose the basic requirement that the "contract be fair and without fraud." *Mercier v. Mercier*, 50 Ga. 546, 548 (1874). See also *McDonald v. McDonald*, 180 Ga. 771 (1), (5) (180 SE 815) (1935) (settlement must be procured without fraud, coercion, threats, or intimidation).

Appellants argue that the execution of the Transfer Documents was demonstrably against the economic interest of Testator's children, and that Herbert misinformed them that those documents were necessary in order to clear up a title problem. However, a family settlement agreement

> " 'will not be considered voluntary and without consideration, but will be enforced in equity as a fair family arrangement independent of its being a compromise of doubtful rights. . . (.) To render valid such compromise agreements it is not essential that the matter should be in real doubt; but it is sufficient if the parties should consider it so far doubtful as to make it the subject of compromise.' " [Cit.] Once the existence of a family settlement is established, it will be enforced without an inquiry " 'into the adequacy or inadequacy of the consideration.' (Cit.)" [Cit.]

*Mitchell v. Mitchell*, supra at 140 (1). Moreover, the undisputed evidence of record shows the existence of adequate consideration for the execution of the Transfer Documents, as well as some difficulty with the existing condition of the title. Indeed, this Court has recognized the problem of how to transfer or release a future interest so as to merge the title. *Towns v. Walters*, supra at 295. Until that problem was resolved, the title of Testator's children, as the holders of the defeasible fees, was not in question, but the value and marketability

of the property clearly was unsettled and could have caused considerable difficulty to an heir who wished to sell. Furthermore, by exchanging identical future interests, Testator's children passed legally indistinguishable consideration to one other. Of course, there were factual differences in each child's circumstances with respect to the existence of lineal descendants and the resulting potential for reversion. At the time of execution of the Transfer Documents, however, it was undeniably possible for the potential lineal descendants of a Testator's child to predecease that child. In addition, Georgia law conclusively presumes that the possibility of issue is not extinct until death. *Clark v. C & S Nat. Bank*, 243 Ga. 703, 706 (2) (257 SE2d 244) (1979); *Landrum v. Nat. City Bank of Rome*, 210 Ga. 316, 318 (1) (80 SE2d 300) (1954). Thus, although the circumstances of Testator's children caused the potential for reversion to vary, their rights were in doubt, and the compromise of such doubtful rights simply furnished additional consideration for the execution of the Transfer Documents. See *Mitchell v. Mitchell*, supra. Although the circumstances regarding lineal descendants never changed, such hindsight does not prove that the settlement was unfair at the time. Family agreements are binding even if it eventually turns out that had the party complaining " 'not entered into the same he would have been more largely benefited.' " *McDonald v. McDonald*, supra at 772 (9).

The only surviving child of Testator, Joel, testified by deposition that Herbert did not improperly influence his siblings or make any misrepresentations in connection with the Transfer Documents. Joel also testified that Testator's children understood the purpose of the documents to pass free and clear title which would become a part of each child's estate even if the child had no lineal descendants, and that Testator's children specifically intended for Herbert's adopted daughter to share in her father's estate. Even assuming that Joel was not clear regarding every legal detail and effect of the Transfer Documents, his deposition testimony stands as positive and uncontradicted evidence in support of summary judgment. In response to that direct evidence, Appellants rely on circumstantial evidence which is consistent with Joel's testimony and does not create a genuine issue of material fact. Evidence that Herbert asked his sister Marie to send a letter suggesting the exchange of future interests pursuant to *Busbee* does not contradict Joel's testimony. Instead, the evidence demonstrates that Marie agreed with the proposal and that Herbert believed, for whatever reason, that it would be better for the initial proposal to come from her. Where, as here, " 'direct and positive testimony is presented on an issue, the opposing party must show some other fact which contradicts the testimony. . . .' [Cit.]" *Furlong v. Dyal*, 246 Ga. App. 122, 123 (1) (539 SE2d 836) (2000).

[I]f this other fact is direct evidence, that is sufficient to allow the case to go to the jury; if the other fact is circumstantial evidence, it must be inconsistent with the defendant's evidence, or if consistent, it must demand a finding of fact on the issue in favor of the plaintiff. [Cit.] " 'In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists.' " [Cit.]

*Withrow Timber Co. v. Blackburn*, 244 Ga. 549, 553 (261 SE2d 361) (1979). Appellants have not contradicted Joel's deposition testimony with any direct evidence that Herbert or the lawyer misrepresented, or failed to make full disclosure of, the true state of affairs, as they understood it, regarding the property distributed from the estate and the mutual reversionary interests therein.

This is not the case of an [executor] attempting to gain from his cestui[s] an advantage which he knows [they are] giving up. The cases where a trustee, executor, administrator, or partner in a superior position buys or procures from his cestui property of the latter by reason of his position are not applicable to this case.

*In re Blodgett's Estate*, 70 P2d 742, 750 (Utah 1937).
Accordingly, the trial court correctly granted summary judgment in favor of Appellees based upon the validity of the Transfer Documents by which the family settlement was effectuated.

2. We also hold that the trial court did not err in ruling that Herbert's adopted daughter is a lineal descendant under Testator's will.
"[T]o effectuate the testator's intent, . . . the adoption laws in effect at the date of the testator's death will determine the class of beneficiaries entitled to take under a testamentary trust in the absence of an express contrary intent. [Cit.]" *Thomas v. Trust Co. Bank*, 247 Ga. 693 (1) (279 SE2d 440) (1981). See also *Epstein v. First Nat. Bank*, 260 Ga. 217, 218 (1) (391 SE2d 924) (1990); *Warner v. First Nat. Bank*, 242 Ga. 661, 664 (1) (251 SE2d 511) (1978). Testator's "will expressed no intention regarding the law to be used in its construction[;] therefore, the law in effect at [his] death governs." *Nunnally v. Trust Co. Bank*, 243 Ga. 42, 43 (252 SE2d 468) (1979). Such law governs even if it was enacted subsequent to the execution of the will. "The will is to be taken as speaking from the time of the death of the [testator]. [Cit.]" *Moore v. Segars*, 192 Ga. 190, 197 (3) (14 SE2d 752) (1941). See also OCGA § 53-4-2. It does not become operative until that time. *Evans v. Palmour*, 274 Ga. 283 (1), fn. 1

(553 SE2d 585) (2001).

> Because a will is an ambulatory instrument during the life of the testator and does not become operative until death, it may be affected by a change of statute occurring at any time between the date of its execution and the date of the death of the testator. [Cits.]

1 Redfearn, Wills, Ga., § 5-19, pp. 119-120 (6th ed. 2000).

The law in effect at the time of Testator's death in 1950 extended the inheritance rights of an adopted child beyond the adoptive parents, as follows:

> [S]aid adopted child shall be considered in all respects as if it were a child *of natural bodily issue* of [the adopting parents] . . .; and shall be deemed a natural child of [theirs] to inherit under the laws of descent and distribution in the absence of a will and to take under the provisions of any instrument of testamentary gift, bequest, devise or legacy *unless expressly excluded therefrom.* (Emphasis supplied.)

Ga. L. 1949, pp. 1157, 1158, § 1 (predecessor of OCGA § 19-8-19 (a) (2)). This "amendment granted a child by adoption the same rights and privileges as a natural born child to take by bequest or devise under the will of an ancestor by adoption." *Warner v. First Nat. Bank*, supra at 665 (1).

> "[U]nder the plain language of this amendment, the previous presumptions were reversed. A testator was no longer required to specifically note in his or her will that a bequest could also flow to non-blood related children; instead, if a testator desired to limit his or her bequest to only blood-relations thereby excluding adopted children, such a provision would have to be explicit."

*Blanchard v. DeLoache-Powers*, 286 F3d 1281, 1288 (II) (A) (1) (11th Cir. 2002). Testator's use of the phrase "lineal descendants" did not constitute an express exclusion of adopted children. *Warner v. First Nat. Bank*, supra at 665 (1), wherein the will used the term "descendants," correctly distinguished *Doughty v. Futch*, 219 Ga. 677, 679 (b) (135 SE2d 286) (1964), not on the basis of use of the phrase "lineal descendants" in that case, but as involving a procedural point based on a former statute which is not applicable here. See current OCGA § 53-1-2 (6) (recognizing that individuals may be treated as lineal descendants by virtue of adoption). Accordingly, we hold that, by virtue of his adopted daughter, who is treated as his "natural bodily

issue" pursuant to the 1949 law, Herbert died leaving a lineal descendant surviving him and was entitled to inherit under Testator's will to the same extent as those children of Testator who died leaving natural born descendants. See *Warner v. First Nat. Bank*, supra at 665 (1).

This holding is not precluded by application of the doctrine of res judicata. For that doctrine to act as a bar, "the cause of action in each suit must be identical." *Norris v. Atlanta & West Point R. Co.*, 254 Ga. 684, 685 (333 SE2d 835) (1985). See also *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866 (1) (463 SE2d 5) (1995).

> A cause of action has been defined as being "the *entire* set of facts which give rise to an enforceable claim." Where some of the operative facts necessary to the causes of action are different in the two cases, the later suit is not upon the same cause as the former ([cits.]), although the subject matter may be the same ([cits.]), and even though the causes arose out of the same transaction. [Cit.]" (Emphasis in original.)

*Life & Casualty Ins. Co. of Tenn. v. Webb*, 112 Ga. App. 344, 347-348 (145 SE2d 63) (1965). See also *Linder v. Rowland*, 122 Ga. 425 (2) (50 SE 124) (1905). Although both the prior action brought by Herbert and the instant suit against his executors involve the construction and effect of Testator's will, the former resolved the nature and transferability of the defeasible and reversionary interests under the will, while the latter concerns the validity of a subsequent transfer and whether one of Testator's children later died leaving a surviving lineal descendant under the terms of the will. Since the questions now before us arose after the holding in *Busbee*, depend on a substantially different set of facts, and are not settled by that holding, the causes of action are not identical. See *Glen Oak v. Henderson*, 258 Ga. 455, 458 (2) (c) (369 SE2d 736) (1988); *Rose v. Chandler*, 247 Ga. 382, 383 (2) (279 SE2d 423) (1981); *Stringer v. Bugg*, 254 Ga. App. 745, 747-749 (2) (563 SE2d 447) (2002); *Bradley v. British Fitting Group*, 221 Ga. App. 621, 623 (2) (472 SE2d 146) (1996); *Pace v. Merck*, 149 Ga. App. 807, 809 (256 SE2d 73) (1979). Where, as here, the causes of action are different, there may still be an estoppel by judgment, but only as to matters which were necessarily and actually adjudicated in the former litigation. *Kent v. Kent*, 265 Ga. 211 (1), fn. 2 (452 SE2d 764) (1995); *Spence v. Erwin*, 200 Ga. 672-673 (1) (a) (38 SE2d 394) (1946); *Bradley v. British Fitting Group*, supra at 623 (2). The issue of whether Herbert was survived by a lineal descendant under the will clearly could not have been adjudicated in the former action. Furthermore, the trial court correctly concluded that, in *Busbee*, this Court did not address whether Herbert's adopted daughter

was a lineal descendant under Testator's will.

Accordingly, the trial court properly denied Appellants' motion for partial summary judgment, and its grant of summary judgment in favor of Appellees was correct on the basis of the Transfer Documents, and because Herbert left a lineal descendant surviving him.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 15, 2003.

*Kilpatrick Stockton, Richard R. Cheatham, Stephen E. Hudson, Burleigh L. Singleton*, for appellants.

*Powell, Goldstein, Frazer & Murphy, David G. Ross, Nicole J. Wade, William J. Linkous, Jr., Perry & Walters, Robert K. Raulerson, James E. Reynolds, Jr., Brock, Clay, Calhoun, Wilson & Rogers, Charles C. Clay*, for appellees.