**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 16, 2022**

# In the Court of Appeals of Georgia

A22A0200. MORSE et al. v. SUNTRUST BANK, N.A. et al.

PHIPPS, Senior Appellate Judge.

In this action concerning the interpretation of a will, plaintiffs Steven and Stuart Morse appeal from the trial court's order that, among other things, denied their renewed motion for partial summary judgment and granted a motion for summary judgment filed by a number of defendants and joined by additional defendants and a guardian ad litem representing various beneficiaries under the will (collectively the "Appellees"). For the reasons that follow, we reverse the trial court's order.

This action involves a multi-generational family trust (the "1967 Trust") created by Section VIII (the "Section") of the Last Will and Testament of Moi M. Monroe executed on May 15, 1967. The Section creates 13 separate and equal sub-trusts, with each of the following grandchildren designated as primary beneficiaries

of one of the sub-trusts: (1) Ann Bashlor Monroe, (2) Jayne Powell Monroe, (3) Ida Katherine Monroe, (4) Carolyn Elizabeth Monroe, (5) Martha Madison Monroe, (6) Moi Madison Monroe III, (7) Patricia Drand Monroe, (8) Mary Helen Monroe, (9) Constance Lee Monroe, (10) William Joseph Monroe, Jr., (11) Carolyn Ruth Hopkins, (12) Hannah Hart Hopkins, and (13) Mary Elizabeth Hopkins. The Section further provides as follows: "In the event an additional grandchild or grandchildren shall be borne to me, whether during my lifetime or after my death, . . . the number of trusts shall be increased accordingly, and each afterborn grandchild shall be the primary beneficiary of a separate, equal trust just as if herein designated by name." The Section also provides that if one of the designated beneficiaries becomes a parent, the annual distributions of income would thereafter be distributed to the parent and his or her children on a pro rata basis: "the income of each trust shall be distributed to the primary beneficiary of such trust and to each child of the primary beneficiary of such trust, in equal shares." The Section then designates when and how the trust income will be distributed to the beneficiaries and their descendants, specifically stating that upon the death of a primary beneficiary, that beneficiary's interest is passed to his or her descendants; however, "in the event of the death of all persons entitled to income distributions from a trust, such trust shall thereupon

2

terminate, and all property then held in such trust shall be divided equally and added to the remaining trust[s]."

The will does not authorize a beneficiary to add someone else as a beneficiary, change the beneficiary, or otherwise dispose of any interest in an individual trust. In fact, the will contains a spendthrift provision expressly prohibiting beneficiaries from disposing of any interest in their trust: "No beneficiary shall have any power to dispose of . . . any interest hereunder[.]" The will also includes a good faith provision: "I would expressly enjoin my family, including all descendants whether now in life or hereafter borne, to deal in fairness and in good faith in all matters, and particularly with respect to my probate estate and the trust estates herein created." It is undisputed that the testator died in Georgia in 1967.

It is undisputed that Mary Helen Monroe ("Molly") never had biological children, but in 2018 she filed a Florida petition to adopt 36-year-old Steven Morse and 34-year-old Stuart Morse. Molly and the Morses acknowledge that Molly adopted the adults, at least in part, so that they could receive distributions from the separate trust created for her under the will. The Morses' biological parents are still living, still have a relationship with Steven and Stuart, and possibly were present during conversations about Molly adopting Steven and Stuart to make them beneficiaries of

3

the trust. William Monroe, Jr., and Hannah Hopkins Franklin, as beneficiaries of one or more trusts potentially affected by the adoption, opposed the adoption petition. On June 4, 2019, the Florida court granted Molly's adoption petition. The record does not contain any evidence that this decision was appealed.

The following morning, Steven and Stuart Morse filed a declaratory judgment action in Gwinnett County Superior Court against SunTrust Bank, William Monroe, Jr., Moi Monroe III, and Hannah Hopkins Franklin, as trustees of the 1967 Trust, claiming a vested interest in a number of family trusts, including the 1967 Trust, and seeking a declaration confirming their status as vested and/or contingent beneficiaries under the trusts and an order directing the trustees to make distributions to them under the terms of the trusts. The Morses subsequently amended their complaint to add a cause of action for breach of fiduciary duty and punitive damages stemming from the trustees' failure to make trust distributions to them. The Morses then moved for partial summary judgment on their declaratory judgment claim, arguing that under both Georgia and Florida law, adopted adults inherit equally with natural children and adopted minors of the settlors of trusts.

The court subsequently granted William Monroe, Jr.'s motion to intervene in his individual capacity, added as parties all income beneficiaries of the trusts at issue,

4

and issued a consent order appointing a guardian ad litem to protect the interests of minor beneficiaries as well as future income or contingent beneficiaries. The Morses then filed a second amended complaint, adding all the parties as defendants. They subsequently filed a third amended complaint when SunTrust merged and became known as Truist. The third amended complaint only alleged a breach of a fiduciary duty; it did not request a declaratory judgment.

Thereafter, SunTrust Bank and William Monroe, Jr., in his capacity as trustee, filed an answer and a counterclaim for a declaratory judgment, asking the court to declare whether the Morses are entitled to any distributions under the 1967 Trust. The Morses filed a motion for partial summary judgment, arguing that they were entitled to judgment as a matter of law on the defendants' counterclaim for a declaratory judgment deciding the Morses' rights under the 1967 Trust. Constance Monroe Bolton, Ida Caroline Bolton, Thomas M. Bolton, and Katherine Bolton Olson (the "Bolton defendants") filed a motion for summary judgment, which a number of other defendants and the guardian ad litem joined. In the motion for summary judgment, the Bolton defendants sought entry of a judgment that the Morses are not beneficiaries of the 1967 Trust. In addition, William Monroe, Jr., William J. Monroe, III, and Caroline Jordan Monroe (the "Monroe defendants") asked the court to deny the

plaintiffs' motion for partial summary judgment and grant the Bolton defendants' motion for summary judgment. SunTrust Bank and William Monroe, Jr., also responded to the Bolton defendants' motion for summary judgment, taking a neutral position with respect to the lawsuit and simply urging the court to declare whether the Morses are entitled to distributions under the 1967 Trust.

The trial court granted the Bolton defendants' motion for summary judgment, concluding that the Morses could not inherit under the will because Molly's adult adoption of them was an act of subterfuge. The court acknowledged that "[n]o Georgia Appellate Court has ever considered, much less held, that a beneficiary of a trust may adopt an adult for purposes of making the adult adoptee a beneficiary and/or to cut out other beneficiaries from the remainder of that beneficiary's share of the trust." The court further found that Molly's adult adoption violated the spendthrift and good faith clauses in the will. The Morses appeal the trial court's order.

We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. *City of St. Marys v. Reed*, 346 Ga. App. 508, 508-509 (816 SE2d 471) (2018). Summary judgment is proper when there is no genuine

6

issue of material fact and the movant is entitled to judgment as a matter of law. Id. at 508; see OCGA § 9-11-56 (c).

In three related enumerations, the Morses argue that the trial court erred in (a) denying their motion for summary judgment seeking a declaration that they are beneficiaries under Moi M. Monroe's 1967 will and (b) granting the Appellees' motion for summary judgment seeking a declaration that the Morses are not beneficiaries under the will. The Morses also claim that the trial court erred in considering parol evidence to decide the Appellees' motion for summary judgment. We agree with the Morses' arguments for four reasons: (1) the Georgia adult adoption statute plainly and unambiguously permits Molly's adult adoption of the Morses; (2) only the four corners of Moi M. Monroe's will are examined to determine if adult adoptees are excluded, and Moi M. Monroe's will does not expressly exclude adult adoptees; (3) the trial court erred in adopting a subterfuge exception to the adult adoption statute; and (4) the spendthrift and good faith provisions in Moi M. Monroe's will do not preclude Molly from taking an action permitted by law and the will. We will discuss each of these principles in turn.

1. *The adult adoption statute*. The parties do not dispute that Georgia law controls the interpretation of the 1967 will or that the law in effect at the time Moi M.

Monroe died governs the will. In fact, it is well settled in Georgia that, "in the absence of an express contrary intention, a will is to be construed according to the law in effect at the testator's death." *Warner v. First Nat. Bank*, 242 Ga. 661, 664 (1) (251 SE2d 511) (1978). Moreover, as relevant in this case, the Supreme Court of Georgia has noted that "the adoption laws in effect at the date of the testator's death will determine the class of beneficiaries entitled to take under a testamentary trust in the absence of an express contrary intent." *Haley v. Regions Bank*, 277 Ga. 85, 89 (2) (586 SE2d 633) (2003) (citation and punctuation omitted). "Such law governs even if it was enacted subsequent to the execution of the will." Id. at 89-90 (2) ("Because a will is an ambulatory instrument during the life of the testator and does not become operative until death, it may be affected by a change of statute occurring at any time between the date of its execution and the date of the death of the testator.") (citation and punctuation omitted).

Here, Moi M. Monroe died in October 1967, and his will expressed no intention regarding the law to be used in its construction. Therefore, the law in effect in October 1967 governs the interpretation of the will and the 1967 Trust. The law in

8

effect in October 1967[1] "extended the inheritance rights of an adopted adult beyond the adopting parent and provided a rule for interpretation of wills." *Elrod v. Cowart*, 284 Ga. 869, 870 (672 SE2d 616) (2009). The relevant statute provided as follows:

> [An] adopted adult shall be considered in all respects as if he or she were a son or daughter of natural bodily issue of [the adopting parent] and shall enjoy the right and privilege of a natural child of [the adopting parent]; and shall be deemed a natural child of [such parent] to inherit under the laws of descent and distribution in the absence of a will and to take under the provisions of any instrument of testamentary gift, bequest, devise or legacy unless expressly excluded therefrom.

---

[1] On appeal, the Monroe defendants dispute when the 1967 revised adoption law — which was "approved" on April 18, 1967 — actually became effective, arguing that Moi M. Monroe — who executed his will on May 15, 1967 — cannot be charged with presumptive knowledge of the adoption law changes. We conclude that the revised adoption law became effective when it was approved on April 18, 1967. While laws in Georgia currently become effective either on the first day of July or the first day of January of the immediately succeeding calendar year, depending on the date such laws are enacted, that rule was not codified by the Georgia legislature until 1968. See OCGA § 1-3-4. Moreover, whether Moi M. Monroe had presumptive knowledge of the change in the law is irrelevant. As stated above, in the absence of an express contrary intent, the adoption laws in effect at the time of the testator's death determine the class of beneficiaries entitled to take under a testamentary trust, even if the governing law was enacted after the will was executed. *Haley*, 277 Ga. at 89 (2). Contrary to the Monroe defendants' claims, and as discussed later in this opinion, the mere use of the word "borne" in Moi M. Monroe's will does not express a contrary intent.

Ga. L. 1967, pp. 804-805, § 1 (codified at Ga. Code Ann. § 74-420, which was the predecessor of OCGA §§ 19-8-19 (a) (2) and 19-8-21 (b)). This statute plainly and unequivocally treated adopted adults as natural children of their adoptive parents "in all respects," including for purposes of inheritance or testamentary gifts, unless the governing document expressly excluded adult adoptees. See *Elrod*, 284 Ga. at 870-871; accord *Faulk v. Faulk*, 240 Ga. 373, 375 (240 SE2d 848) (1977). And "where, as here, the adoption order is not void on its face, it is not subject to collateral attack." *Elrod*, 284 Ga. at 872; accord *Porter v. Johnson*, 242 Ga. 188, 190-191 (2) (249 SE2d 608) (1978). We therefore must conclude that the Morses were properly adopted as adults.

Accordingly, under the law in effect at the time of Moi M. Monroe's death, Steven and Stuart Morse, as properly adopted adults, would be deemed the legal equivalent of natural children of Molly and entitled to take under the trust created for her in Moi M. Monroe's will unless adult adoptions were expressly excluded in his will. We therefore turn to Moi M. Monroe's will to determine if adult adoptees were expressly excluded.

2. *Moi M. Monroe's will does not expressly exclude adult adoptees.* The determination of whether an adult adoptee is expressly excluded from inheriting

10

under a will is controlled by the Supreme Court's decision in *Elrod v. Cowart*, supra. In *Elrod*, the testator died in 1970, and his will granted a life estate in all of his real estate to his son, Henry, with the remainder interest passing to the testator's four daughters, his grandson, and "any child or children of [Henry] who shall together take an equal part." 284 Ga. at 869-870. Henry never had any biological children, but adopted an adult, Cowart, in 2004. Id at 870. When Henry died the following year, two of the remaindermen filed an action contesting Cowart's right to inherit under the will as Henry's "child." Id. The superior court granted summary judgment to Cowart, and the Supreme Court of Georgia affirmed the decision, concluding that the 1967 adoption statute applied and the testator's will did not expressly exclude adopted persons. Id. at 870-872.

In *Elrod*, the Court specifically held that when determining whether a will expressly excludes adult adoptees as beneficiaries, a court's review of the testamentary document is limited to the four corners of the instrument: "[O]nly the four corners of the will must be examined to determine whether adopted persons are expressly excluded." 284 Ga. at 872. "[P]arol evidence of the surrounding circumstances is not considered." Id.

11

As in *Elrod*, the 1967 adoption statute applies in this case, and a review of the four corners of Moi M. Monroe's will reveals no exclusion for adopted children or adults. Accordingly, the trial court erred in determining that the Morses could not take under the testamentary trust created in the will. If Moi M. Monroe had wanted to exclude non-blood relatives from benefitting under the 1967 Trust, he simply needed to include language to that effect in the will. He did not, and the language in the will is plain and unambiguous.

The Monroe defendants assert that the references in Moi M. Monroe's will to descendants "borne" to his family — "I would expressly enjoin my family, including all descendants whether now in life or hereafter borne . . ." and "In the event an additional grandchild or grandchildren shall be borne to me . . ." — make it "reasonable to presume" that Moi M. Monroe did not intend the adult adoption statute in effect in October 1967 to apply. However, the presumption urged by the Monroe defendants is not supported by the clear language of the will or the applicable law.

> The cardinal rule in construing the provisions of a will is to determine the intent of the testator. It is well settled, however, that there is no room for construction when the meaning of the words used in the will is so plain and obvious that it cannot be misunderstood. This is true even if the words used in the will express a meaning entirely at variance with the real intention of the testator. The plain and unambiguous terms

12

of a will must control and parol evidence cannot be used to contradict or give new meaning to that which is expressed clearly in the will.

*Smith v. Ashford*, 298 Ga. 390, 393 (1) (782 SE2d 251) (2016) (citations and punctuation omitted); see also *Hungerford v. Trust Co. of Ga.*, 190 Ga. 387, 389 (9 SE2d 630) (1940) ("The plain language here involved can not be changed by speculation as to what might have been the motive prompting the testatrix in using [certain] language. Courts are without authority to rewrite by construction an unambiguous will; for to do that would be to substitute the will of the court for that of the testator."). Here, as stated above, (a) the adoption law in effect at the time of Moi M. Monroe's death determines the class of beneficiaries entitled to take under a testamentary trust, even though the governing law was enacted after the will was executed, unless the will contains an express contrary intention, see *Haley*, 277 Ga. at 89 (2); (b) Moi M. Monroe's will does not express a contrary intention to treat adopted children differently than they would be under the adoption law in effect at the time of his death; and (c) the adoption law in effect at that time provided that adult adoptees were to be considered as "natural bodily issue of" the adopting parent, or, in other words, as "borne" by the adopting parent, see Ga. Code Ann. § 74-420. So viewed, Moi M. Monroe's use of the word "borne" does not, as urged by the

13

Monroe defendants, indicate that he intended to exclude adopted adults from inheriting under the will.

The Morses correctly assert that since Moi M. Monroe "put nothing in his Will that expressly excluded adopted children or adults from the testamentary trusts he created[,] . . . any person adopted into Moi Monroe's family — adult or child — is deemed to be a natural member of the Monroe family and is entitled to receive the benefits as a child of a parent's separate subtrust of the 1967 Trust." The trial court, therefore, erred in (a) denying the Morses' motion for summary judgment seeking a declaration that they are beneficiaries of the 1967 Trust and (b) granting the Appellees' motion for summary judgment seeking a declaration that the Morses are not beneficiaries of the 1967 Trust.

3. *Theory of subterfuge*. In an attempt to avoid the plain and unambiguous language in Moi M. Monroe's will and in the adult adoption statute, the Appellees argued in the trial court, as they do on appeal, that Georgia courts should adopt a theory of subterfuge in the context of adult adoptions. Subterfuge, according to the Appellees, involves "committing fraud upon the Court" by doing "something that you're allowed to do, but . . . doing it so as to create a circumstance that the law would otherwise seek to avoid." On appeal, the Monroe defendants specifically assert

that Molly's adoption of the Morses as adults should be deemed subterfuge because she took "a technical reading of the Georgia Adult Adoption Statute and furtively applied it for a purpose which is unjust, inequitable, and plainly out of step with what the Legislature intended in enacting such statute."

The Appellees — and the trial court in accepting the Appellees' proposed theory and ruling that the Morses are prohibited from inheriting under Moi M. Monroe's will based on the theory of subterfuge — rely primarily on case law from foreign jurisdictions rejecting adult adoption attempts as subterfuge and refusing to afford beneficiary status to the adult adoptees. See, e.g., *First Nat. Bank of Dubuque v. Mackey*, 338 NW2d 361 (Iowa 1983); *Minary v. Citizens Fidelity Bank & Trust Co.*, 419 SW2d 340 (Ky. 1967); *Dixon v. Weitekamp-Diller*, 979 NE2d 98 (Ill. App. Ct. 2012); *In re Nowels Estate*, 339 NW2d 861 (Mich. Ct. App. 1983). We do not find this foreign authority persuasive given Georgia's clear adoption statute in effect at the time of Moi M. Monroe's death and the clear language in his will.

While the trial court cited Georgia decisions holding that it would be "untenable" to allow parties to subvert the purpose of a statute, none of those contexts is applicable here. See *SRM Group, Inc. v. Travelers Property Cas. Co. of America*, 308 Ga. 404, 409-410 (3) (841 SE2d 729) (2020) (overruling cases holding that a

15

plaintiff-in-counterclaim cannot seek attorney fees under OCGA § 13-6-11); *State v. Stinson*, 278 Ga. 377, 379-380 (602 SE2d 654) (2004) (concluding that a defendant who has pled guilty and utilized the benefits of a rehabilitative option in order to avoid an adjudication of guilt may not subsequently withdraw the plea as a matter of right when faced with a violation of probation); *Davenport v. State*, 136 Ga. App. 913, 914 (2) (222 SE2d 644) (1975) (concluding that a defendant who has pled guilty and utilized the benefits of first offender status may not subsequently withdraw the plea when faced with a probation revocation). Likewise, the cited termination of parental rights decisions applying the theory of subterfuge are not applicable here. See *In the Interest of C. T. M.*, 273 Ga. App. 168, 169 (1) (b) (614 SE2d 812) (2005) (affirming juvenile court decision finding, among other things, that the grandmother's petition to adopt children was a subterfuge to circumvent termination); *In the Interest of J. W. H.*, 245 Ga. App. 468, 470 (1) (b) (538 SE2d 112) (2000) (holding that a parent may not avoid a scheduled termination of parental rights hearing by surrendering parental rights to the foster parents or proposing an adoption as a mere subterfuge to thwart the termination case); *In the Interest of A. N. M.*, 238 Ga. App. 21, 25 (2) (b) (517 SE2d 548) (1999) (holding that parents may not thwart an

anticipated termination of parental rights by executing surrenders of their rights).

Pretermitting whether Molly adopted the Morses — in whole or in part — so they could benefit from the 1967 Trust after she died and thereby preclude her trust from being disbursed to other trust members, we conclude that the trial court erred in creating a subterfuge exception to the adult adoption statute, for two interrelated reasons. First,

> [w]hen we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning. Where the language of a statute is plain and susceptible of only one natural and reasonable construction, an appellate court must construe the statute accordingly.

See *Bell v. Gilder Timber Co.*, 337 Ga. App. 47, 49 (785 SE2d 682) (2016) (citations and punctuation omitted). "[W]here the language of an act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden." *Ga. Farm Bureau Mut. Ins. Co. v. Jah*, 193 Ga. App. 169, 171 (387 SE2d 447) (1989). In the instant case, the statute is clear and unambiguous, and its plain and ordinary meaning is that an adopted adult is treated as a natural child of his or her adopted parents "in all

17

respects," including for the purposes of inheritance, unless the governing document "expressly exclude[s]" adult adoptees. See Ga. Code Ann. § 74-420. The Appellees' "proposed exception cannot be engrafted upon the plain language of the [statute] under an application of any rule of statutory construction." *Jah*, 193 Ga. App. at 171.

Second, it is not the judiciary's province to create exceptions to statutes. See, e.g., *Baldwin v. Gay*, 358 Ga. App. 213, 217, n. 4 (854 SE2d 553) (2021) (finding that any "draconian" result was the product of the plain language of the statute, and "it is not up to this Court to create an exception to that legislatively created rule"); *Harvey v. State*, 217 Ga. App. 776, 777-778 (459 SE2d 433) (1995) (holding that because Georgia's exclusionary rule was created by the legislature, not the judiciary, there is no "good faith" exception unless and until the Georgia legislature adopts one); *Clark v. Randall*, 155 Ga. App. 806, 807 (272 SE2d 769) (1980) (concluding that "[i]t is not for this court to provide judicial exceptions to the statute"). Indeed, according to the Supreme Court of Georgia, any modification or revision of a statute, such as adopting an exception to a statute, is a legislative function, see *Ward v. Moon*, 259 Ga. 293, 294 (380 SE2d 263) (1989), and "[t]he doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced," as a result of which appellate courts "can not add a line to the law," *Turner v. Ga. River Network*,

18

297 Ga. 306, 308-309 (773 SE2d 706) (2015) (citation and punctuation omitted). Accordingly, even if the Appellees have presented a compelling policy argument as to why a subterfuge exception should be created, the plain and unambiguous language in the adult adoption statute precludes this Court from doing so, as that argument is properly addressed to the General Assembly. See *Bell*, 337 Ga. App. at 49 (finding that although a party presented a compelling policy argument as to why an exception should be created, that argument was properly addressed to the General Assembly). This reasoning is especially apt here, considering the fact that the General Assembly has extensively amended the adoption code since 1967, see Ga. L. 2018, pp. 19-20, § 1-1, yet chosen not to include a subterfuge exception. Compare Ga. Code Ann. § 74-420, with OCGA §§ 19-8-19 (a) (2) and 19-8-21.

Based on the foregoing, the trial court erred in judicially creating a subterfuge exception to the clear statutory provision permitting Molly's adult adoption of the Morses and the Morses' ability to inherit as if they were Molly's natural children. Under the statute, Molly's reasons for adopting the Morses and the circumstances surrounding that adoption are simply irrelevant.

4. *Spendthrift and good faith provisions*. The above conclusions do not end our inquiry in this case. The trial court also based its summary judgment decisions on the

spendthrift and good faith provisions in Moi M. Monroe's will, so we must address those holdings.

(a) *Spendthrift provision*. The parties do not dispute that a spendthrift provision prohibits beneficiaries from transferring or disposing of any interest in their trusts. See generally OCGA § 53-12-2 (12) and 53-12-80 (c). The spendthrift provision in Moi M. Monroe's will expressly states: "No beneficiary shall have any power to dispose of . . . any interest hereunder[.]" In this case, the trial court found that Molly's adult adoption of the Morses violated the spendthrift provision of the will because Molly used the adoption as a mechanism to transfer a portion of her interest in the 1967 Trust to the Morses. The court detailed facts supporting its finding that Molly's adult adoption of the Morses was an act of subterfuge to transfer her 1967 Trust interest to them. However, as we concluded above in Division 3, the trial court erred in adopting a subterfuge exception to the adult adoption statute.

In short, Molly's adoption of the Morses does not constitute a violation of the spendthrift provision because (1) the adoption was never appealed and therefore is valid, see *Elrod*, 284 Ga. at 872; (2) the adult adoption statute plainly treats adopted adults as "natural bodily issue of" the adopting parent "in all respects," including for purposes of inheritance or gifts, unless the governing document expressly excludes

20

adult adoptees, see Ga. Code Ann. § 74-420; *Elrod*, 284 Ga. at 870-871; (3) Moi M. Monroe's will does not specifically exclude adult adoptees; and (4) the adult adoption statute does not contain a subterfuge exception. Based on these factors, Molly's adult adoption is not a "transfer" of interest for purposes of a spendthrift provision. Her adoption of the Morses is as if she bore the Morses herself. Following the Appellees' "transfer" argument to its logical conclusion, the birth (or adoption) of any child to (or by) any trust beneficiary would be an improper transfer in violation of the spendthrift provision, and the Appellees do not contend that inheritance by a natural born child would be subject to the spendthrift provision. Indeed, Moi M. Monroe's will expressly provides that if one of the designated beneficiaries became a parent, "the income of each trust shall be distributed to the primary beneficiary of such trust and to each child of the primary beneficiary of such trust, in equal shares," and upon the death of a primary beneficiary, the beneficiary's interest is passed to his or her descendants.

Accordingly, the trial court erred in concluding that Molly's adult adoption of the Morses violated the spendthrift provision of Moi M. Monroe's will.

(b) *Good faith provision*. Moi M. Monroe's will also includes a good faith provision: "I would expressly enjoin my family, including all descendants whether

now in life or hereafter borne, to deal in fairness and in good faith in all matters, and particularly with respect to my probate estate and the trust estates herein created." The trial court found that Molly's adult adoption of the Morses violated this provision because Molly's admitted purpose in adopting the Morses was to make them beneficiaries of the 1967 Trust. We disagree.

As previously stated, Moi M. Monroe's will does not expressly exclude adopted persons — including adopted adults — from benefitting under the 1967 Trust, Molly properly adopted the Morses, and under the adult adoption statute the Morses are now treated as if they were Molly's natural born children. Doing what both the law and the will authorized — adopting adults so they could benefit under the will — does not demonstrate bad faith as a matter of law. In fact, following the Appellees' "good faith" argument to its logical conclusion would require an inquiry into whether any other beneficiaries had given birth to their biological children for the purpose of making such children beneficiaries of the trust.

This Court repeatedly has held in other contexts that "a contracting party cannot breach an implied covenant of good faith where it has done what the provisions of the contract expressly permit it to do." *Greenwald v. Columbus Bank & Trust*, 228 Ga. App. 527, 529 (492 SE2d 248) (1997) (finding that a bank did not

breach its duty of good faith where the terms of a guaranty permitted it to act as it did); see also *Medical Assn. of Ga. v. Blue Cross & Blue Shield of Ga.*, 244 Ga. App. 801, 803 (1) (536 SE2d 184) (2000) (finding that an insurance company, by changing its definitions of usual, customary, and reasonable, "did nothing more than what the contracts and rules expressly allowed" and therefore did not breach its duty to act in good faith). In fact, the Supreme Court of Georgia specifically has held that the motive of an individual who must act in good faith "is immaterial" where the individual has done what a contract expressly gives him the right to do. *Marathon U.S. Realties v. Kalb*, 244 Ga. 390, 392 (260 SE2d 85) (1979) (finding an escrow agent's motive irrelevant since his actions were permitted by the contract); accord *Automatic Sprinkler Corp. v. Anderson*, 243 Ga. 867, 869 (257 SE2d 283) (1979) ("[A] right can be exercised without incurring liability regardless of the motive for so doing.") (citation and punctuation omitted).

Because Molly did nothing more than what the adult adoption statute and Moi M. Monroe's will allowed, the trial court erred in finding that she violated the good faith provision in the will.

5. Since our above holdings reverse the trial court's order, we need not address the Morses' remaining assertion that the trial court erred by considering parol

23

evidence, such as the circumstances surrounding their adoption, in deciding the Appellees' motion for summary judgment.

For each of the above reasons, we reverse the trial court's judgment. The Morses, as the adopted sons of Molly, are entitled as a matter of law to inherit under the 1967 Trust to the same extent as natural born children of Molly.

*Judgment reversed. Doyle, P. J., and Reese, J., concur*.